IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T MOBILITY LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LESLIE BERNARDI, ET AL.,<br><br>    Defendants.<br>_____/<br><br>DEBORAH SCHROEDER ET AL.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AT&T MOBILITY LLC,<br><br>    Defendant.<br>_____/ | No. C 11-03992 CRB<br>No. C 11-04412 CRB<br><br>**MEMORANDUM AND ORDER GRANTING PRELIMINARY INJUNCTION** |

    AT&T Mobility LLC ("ATTM"), filed a Complaint and request for preliminary injunction in this case on August 12, 2011, requesting that this Court enjoin two pending arbitrations filed against ATTM. Dkt. 1. On September 6, 2011, Deborah Schroeder and Astrid Mendoza filed a Petition to Enforce Arbitration Agreements in Case No. 11-4412. On September 8, 2011, the Court related Case No. 11-4412 to this case. Dkt. 15. On September 9, 2011, Defendants moved to Compel Arbitration in this case. Dkt. 16.

The parties' central disagreement in both actions is whether the arbitration demands brought by Schroeder and Mendoza, as well as Laura Barrett and Leslie Bernardi (hereinafter "Customers") exceed the scope of the arbitration agreements each customer signed with ATTM. The Customers' arbitration demands challenge the proposed merger between ATTM and T-Mobile under the Clayton Act, 15 U.S.C. §§ 18 and 26. ATTM argues the arbitration demands are inappropriate because they attempt to bring class and representative claims in violation of the agreement, and seek general injunctive relief prohibited by the agreement. The customers argue the Clayton Act claim falls within "all disputes" between the parties covered by the agreement, and thus, must be arbitrated. Customers Schroeder and Mendoza also move for an injunction requiring ATTM to pay the American Arbitration Association ("AAA") filing fees for the arbitrations they have initiated. The Court ordered the prosecution or dismissal of the arbitrations stayed pending the hearing on the motion for preliminary injunction. The Court held the hearing on October 21, 2011.

T-Mobile, the Communications Workers of America, and the States of Utah, Alabama, Georgia, Kentucky, Louisiana, New Mexico, North Dakota, Oklahoma, and West Virginia have sought and been granted leave to appear as *amici curiae*. All *amici* support ATTM's motion for preliminary injunction.

The nature of the arbitration demands are a form class or representative action, and thus, the Court GRANTS ATTM's preliminary injunction, and DENIES the motions to compel arbitration. The Court also DENIES the motion for preliminary injunction seeking payment of the AAA filing fees as moot.

**I.   FACTUAL BACKGROUND**

On March 20, 2011, AT&T Inc. (AT&T Mobility's parent company) and Deutsche Telekom AG ("Deutsche Telekom") announced an agreement under which AT&T will acquire Deutsche Telekom's subsidiary T-Mobile USA ("T-Mobile"), leading to the merger of ATTM and T-Mobile, in a transaction valued at approximately $39 billion. See Declaration of Joseph Baker in support of Motion for Preliminary Injunction ("Baker Decl.") (dkt. 21) ¶¶ 3-4 & Exs. 1-2. The merger between AT&T and T-Mobile is subject to review

1  by the Department of Justice ("DOJ"), the Federal Communications Commission ("FCC"),
2  and certain state regulators. On August 31, 2011, the DOJ commenced an action in the
3  United States District Court for the District of Columbia alleging that the proposed merger
4  violates Section 7 of the Clayton Act, 15 U.S.C. § 18, and seeking a permanent injunction
5  barring consummation of the merger. United States v. AT&T Inc., No. 1:11-cv-01569
6  (D.D.C.).

7  Separately, the merger requires the FCC's approval because the Commission must
8  approve the transfer and acquisition of federally issued licenses. AT&T, Inc. and Deutsche
9  Telekom have filed an application seeking the FCC's approval of the merger. See Baker
10 Decl. ¶¶ 5, 23 & Exs. 3, 21. The merging parties have submitted hundreds of pages of briefs
11 and 19 witness affidavits; over 130 parties have registered their opposition to the merger; and
12 over 400 parties have filed in support of the merger. Baker Decl. ¶ 8 & Ex. 6. In addition,
13 the public utility commissions of Arizona, California, Hawaii, Louisiana, and West Virginia
14 have commenced proceedings to review the effect of the merger on competition in their
15 respective states, and the commissions in Arizona, Louisiana, and West Virginia have
16 already granted approval of the merger. Id. ¶¶ 17-22 & Exs. 15-20.

17 AT&T provides wireless voice and data services to more than 98 million customers
18 across the country. Kevin Ranlett Declaration in support of Motion for Preliminary
19 Injunction ("Ranlett Decl.") (dkt. 40) Exs. 1-2. AT&T requires its customers to sign a
20 Wireless Customer Agreement ("Agreement") that governs the relationship between the
21 parties.

22 That agreement includes a provision requiring AT&T and each customer to arbitrate
23 "all disputes and claims between us" on an individual basis. Compl. Ex. A, Agreement §
24 2.2(1). The agreement continues "**YOU AND AT&T AGREE THAT EACH MANY**
25 **BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL**
26 **CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY**
27 **PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.**" Id. § 2.2(6)
28 (boldface and capitalization in original). The provision reiterates that "unless both you and

AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding." Id. In addition, "The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by the party's individual claim." Id.

Customers are four ATTM customers who have commenced arbitration proceedings pursuant to Section 2.2 of their Agreement with ATTM. In total, three plaintiff's firms (the Bursor Firm, the Faruqi Firm and Thornton, Davis, & Fein) have filed a total of 1,132 demands for arbitration before the AAA that are almost identical to each other aside from the names and addresses of the claimants. Supplemental Declaration of Kevin Ranlett in Opposition to Motion to Compel Arbitration ("Supp. Ranlett Decl.") (dkt. 63-1) ¶ 3. Customers' attorneys have paid the AAA filing fees for 24 of the filed arbitrations, and those arbitrations have been accepted by the AAA. Id. ¶ 4. In the second case before the Court, No. 11-4412, Customers are seeking an injunction forcing ATTM to pay the filing fees of two Customers' arbitrations. Presumably, if successful they would move to force ATTM to pay the fees on the remaining 1,106 demands.

ATTM moved to enjoin the 24 arbitrations where the filing fee has been paid, in 8 district courts. These cases all present the same issue of whether the arbitration demands exceed the scope of the arbitration agreement. Three courts have since ruled on the issue, all in favor of ATTM.[1]

---

[1] In AT&T Mobility LLC v. Bushman, et. al., No. 11-80922 (S.D. Fla. Sept. 23, 2011), Judge Ryskamp granted ATTM's Motion for Preliminary Injunction and denied Defendants' Motion to Compel Arbitration. Reply in support of Motion for Preliminary Injunction (dkt. 72) Ex. A ("Bushman Order"). Judge Ryskamp held ATTM was likely to succeed on the merits of its claim, finding Section 2.2(6) of the arbitration agreement barred the arbitration demands because "(a) Defendants attempt to bring a form of representative or class proceeding"; and (b) Defendants' demands do not seek "injunctive relief only in favor of the individual party seeking relief" and "only to the extent necessary to provide relief warranted by that party's individual claim." Bushman Order at 3. Judge Ryskamp also found ATTM met the other requirements for a preliminary injunction. Id. at 5-8.

In AT&T Mobility LLC v. Smith, No. 11-5157, (E.D. Pa. Oct. 7, 2011), Judge Davis granted ATTM's Motion for Preliminary Injunction and denied Defendant's Motion to Compel Arbitration. Statement of Recent Decision in support of AT&T Mobility's Motion for Preliminary Injunction ("Statement of Recent Decision") (dkt. 77) Ex. 1 ("Smith Order").

## II. LEGAL STANDARD

The standard for issuing a preliminary injunction is well established. The party seeking relief must demonstrate that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent relief; (3) the balance of equities tips in its favor; and (4) the requested relief is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" towards the movant is sufficient for relief so long as the other two elements are also met. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress's purpose in passing the Act was to put arbitration agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the Act, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The Supreme Court has emphasized that courts should refer a matter for

---

Judge Davis held ATTM was likely to succeed on the merits of its claim because the defendant improperly brought her arbitration as a form of representative or class proceeding, and declined to base her ruling on the fact that the relief sought in the arbitration exceeds the scope of the agreement. Smith Order at 7-8. Judge Davis also held the other Winter elements were met. Id. Ex. 1 at 15-20.

Finally, in AT&T Mobility LLC v. Gonnello, No. 11-5636 (S.D.N.Y. Oct. 7, 2011), Judge Castel denied the defendant's motion to compel arbitration, and thus did not reach the motion for preliminary injunction. Statement of Recent Decision Ex. 2 ("Gonnello Order"). Judge Castel held that "[a]s the only relief sought by the individual defendants is relief that is foreclosed by the language of the arbitration provision, the demand for arbitration is beyond the scope of the disputes that the parties have contractually agreed to arbitrate." Gonnello Order at 7. The Court also then found it not necessary to reach the merits of ATTM's claim for injunctive relief, and denied it without prejudice for renewal. Id.

1 arbitration "unless it may be said with positive assurance that the arbitration clause is not
2 susceptible of an interpretation that covers the asserted dispute." United Steelworkers of
3 Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). "In the absence of any
4 express provision excluding a particular grievance from arbitration . . . only the most forceful
5 evidence of a purpose to exclude the claim from arbitration can prevail." Id. at 584-85.
6 Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of
7 arbitration." Id. at 589.

8     At the same time, however, the Supreme Court has repeatedly emphasized that
9 "arbitration is a matter of contract and a party cannot be required to submit to arbitration any
10 dispute which he has not agreed so to submit." AT&T Techs. Inc. v. Commc'ns Workers of
11 Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers, 363 U.S. at 582). Thus, a
12 federal court's task in reviewing the arbitrability of a particular dispute is to determine
13 whether the parties have agreed to submit that dispute to arbitration – i.e., whether the
14 dispute is within the scope of the arbitration agreement.

## III. DISCUSSION

16     As ATTM satisfies all four of the Winter factors, the Court grants the motion for
17 preliminary injunction.

### A. Likelihood of Success on the Merits

19     Since the Customers have initiated arbitration proceedings that are prohibited by their
20 arbitration agreements, ATTM is likely to succeed on the merits of its claims. At a
21 minimum, ATTM has raised serious questions warranting relief under Alliance for the Wild
22 Rockies v. Cottrell.

#### 1. The Scope of Arbitrability is for the Court to Decide

24     "[W]hether the parties have submitted a particular dispute to arbitration, i.e., the
25 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and
26 unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83
27 (2002) (quoting AT&T Techs., Inc., 475 U.S. at 649) (emphasis omitted); see also Litton Fin.
28 Printing Div. v. NLRB, 501 U.S. 190, 208 (1991) ("a party cannot be forced to arbitrate the

6

arbitrability question") (internal quotation marks omitted). Questions of arbitrability are ones that the "contracting parties would likely have expected a court to have decided" and "are not likely to have thought . . . that an arbitrator would do so." Howsam, 537 U.S. at 83.

Customers argue the question of arbitrability is a very narrow one. They argue there are two threshold questions a district court must answer before compelling or enjoining arbitration: "(1) Did the parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between the parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998). Customers argue that "[o]nce a court answers these questions in the affirmative, the parties must take up all additional concerns with the arbitrator." Elzinga & Volkers, Inc. v. LSSC Corp., 838 F. Supp. 1306, 1309 (N.D. Ind. 1993). Since ATTM does not contest that a valid agreement to arbitrate exists, Customers argue the sole issue for the Court to decide is whether their Clayton Act claims are within the substantive scope of the agreement to arbitrate.

This is too narrow a reading of the Court's power. First, and importantly, the arbitration agreement itself assigns the question of arbitrability generally to the courts. The relevant clause of the agreement states, "[a]ll issues are for the arbitrator to decide, except that <u>issues relating to the scope and enforceability of the arbitration provision are for the court to decide</u>." Agreement § 2.2(4) (emphasis added). Thus, the arbitration agreement gives the Court, not the arbitrator, the authority to determine whether a particular dispute is arbitrable, i.e. the "scope . . . of the arbitration provision." This is consistent with the principle that "[t]he question of whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakable provide otherwise." Howsam, 537 U.S. at 83. Since the parties here did not unmistakably provide otherwise, and in fact, reiterated this general principle, the Court must determine whether the dispute in question is arbitrable.

This is not simply limited to whether the Clayton Act claim is arbitrable on its face, but looks to the "dispute" as a whole to determine if it is arbitrable. The FAA mandates the

7

court determine whether the arbitration will proceed "in accordance with the terms of the agreement." 9 U.S.C. § 4; see also AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011). That is why, "[u]nder the FAA, a party to an arbitration agreement may petition a [federal] court for an order directing that 'arbitration proceed in the manner provided for in such agreement.'" Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 130 S. Ct. 1758, 1773 (2010) (quoting 9 U.S.C. § 4) (emphasis added). The power of the Court is broader than simply determining whether the Clayton Act dispute is arbitrable, but rather, encompasses whether the dispute demand would proceed within the scope of, and in the manner provided for, in the agreement.

### 2. Customers' Demands are Beyond the Scope of the Agreement

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" Concepcion, 131 S. Ct. at 1748 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)). "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" Stolt-Nielsen, 130 S. Ct. at 1773-74 (quoting Volt Information Sciences, 489 U.S. at 479).

ATTM argues the parties have not agreed that the claims in Customers' demands may be resolved by an arbitrator. Section 2.2(6) of the arbitration agreements between ATTM and Customers provides, in relevant part:

> The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

Agreement § 2.2(6) (emphasis in original). ATTM argues this language establishes the principle that only individual claims seeking individualized relief may be pursued in arbitrations under the agreements. Thus, ATTM argues the demands exceed the scope of the agreement because (a) Customers are attempting to bring a "form of a representative or class

8

proceeding"; and (b) Customers' demands do not seek "injunctive relief only in favor of the individual party seeking relief" and "only to the extent necessary to provide relief warranted by that party's individual claim."

### a. Representative or Class Claims

Customers have nominally filed their arbitration demands as individuals, and do not explicitly purport to represent anyone but themselves individually. Yet, courts consistently prioritize substance and function over form when characterizing the nature of a dispute or claim. "Courts need not accept the label" a party places on a claim. Gen. Dynamics Corp. v. United States, 139 F.3d 1280, 1283 (9th Cir. 1998) ("Courts are not required to, and should not, simply look at the surface of a complaint for the purpose of ascertaining the true basis of an attack . . . ."); see also Jarbough v. Attorney Gen. of U.S., 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling.").

Thus, the Court must look beyond the mere fact that there is no class allegation in the arbitration demand, particularly when dealing with a potential class situation. For example, the Ninth Circuit has emphasized substance over form, stating that "binding current members of an association to the results of prior litigation conducted by that association is considered especially appropriate when the litigation resembles a class action in substance, if not in form." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1083 n.18 (9th Cir. 2003) (emphasis added); see also W. Virginia ex rel. McGraw v. Comcast Corp., 705 F. Supp. 2d 441, 452-53 (E.D. Pa. 2010) (stating the Class Action Fairness Act "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name"). This reasoning applies to both litigation and arbitration contexts, and applies here.

Customers are four of over 1,000 people who, represented by the same firm, filed essentially identical arbitration demands, all seeking the same, non-individualized relief:

injunction of the ATTM/T-Mobile merger. The demands bear all the critical hallmarks of class and representative actions, and thus, run afoul of the agreement's prohibition of "any form of a representative or class proceeding." Agreement § 2.2(6).

In Concepcion, the Supreme Court reiterated that the FAA embodies a "liberal federal policy favoring arbitration," but that the policy does not extend to class arbitrations. 131 S. Ct. at 1745, 1748 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). Concepcion discusses several ways class arbitration is distinguished from individual arbitration – all of which are present here.

First, Concepcion focuses on how the "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Id. at 1751. This issue was particularly troublesome to Judge Davis. He stated: "Here, the multiple, functionally identical arbitrations filed by Smith and others would likely result in a 'procedural morass,' not a 'final judgment.' Consider the following issues that are likely to arise. Does an arbitrator have the power to enjoin a merger that the FCC, DOJ and various state agencies are concurrently reviewing? Would enjoining the merger exceed the scope of the parties' arbitration agreement? Would one arbitrator be bound by the findings and decisions of another? In the DOJ's parallel challenge of the merger, would the District Court for the District of Columbia be bound by principles of preclusion to accept the arbitrator's decision? What if different arbitrators reach inconsistent results? Grappling with these issues would almost certainly generate the 'procedural morass' the Concepcion Court seeks to avoid." Smith Order at 11. These are serious considerations that clearly apply equally here.

Second, class arbitration does not necessarily protect absent parties. Concepcion, 131 S. Ct. at 1751-52 ("[I]t is at the very least odd to think that an arbitrator would be entrusted with ensuring that third parties' due process rights are satisfied."); see also Stolt-Nielsen, 130 S. Ct. at 1776 ("The arbitrator's award no longer purports to bind just the parties to a single

arbitration agreement, but adjudicates the rights of absent parties as well."). An arbitrator's decision, either for or against the merger, will seriously affect many absent parties' interests. For example, T-Mobile has a not-insignificant, $39 billion stake in the outcome of each arbitration, but is not a party to the arbitration. See T-Mobile's *Amicus Curiae* Brief in support of AT&T's Motion for Preliminary Injunction ("T-Mobile Brief") (dkt. 53-1) at 3-4 (stating T-Mobile's parent stands to gain $39 billion from the merger, and listing the numerous benefits T-Mobile believes the merger will deliver for its customers). Other absent parties include: cellular technology consumers; public interest groups that both oppose and support the merger; mobile computing technology businesses (again that both oppose and support the merger); labor unions representing 20 million workers and educators; and the many government bodies that are also evaluating the merger, including state governors, state attorneys general, the Congress, the FCC and the DOJ.

Third, "[a]rbitration is poorly suited to the higher stakes of class litigation." Concepcion, 131 S. Ct. at 1752. The "stakes" of class arbitration "are comparable to those of class action-litigation, even though the scope of judicial review is much more limited." Stolt-Nielsen, 130 S. Ct. at 1776. This increases the risk to defendants, and "[f]aced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims. Other courts have noted the risk of 'in terrorem' settlements that class actions entail, . . . and class arbitration would be no different." Concepcion, 131 S. Ct. at 1752. The arbitrations at issue here embody this risk, as the fate of a $39 billion merger may pressure ATTM to settle claims it believes to be questionable.

The arbitration demands here bear all the hallmarks of "class arbitration" laid out in Concepcion and Stolt-Nielsen. See also Bushman Order at 4 ("Defendants' arbitration demands bear the hallmarks of a class action. Although each arbitration demand is brought by an individual customer, the arbitrators are not being asked to award relief affecting only the individual claimants, such as an adjustment to an individual rate plan. Rather, each carbon copy arbitration demand asserts a violation of Section of the Clayton Act (15 U.S.C. § 18), and each demand requests the same class-wide relief: enjoining the merger between

ATTM and T-Mobile. Granting relief in one arbitration would secure the relief sought by each of the 1,000 or more individuals seeking arbitration.").

Customers argue this is incorrect for three main reasons: (1) each arbitration demand is submitted on behalf of an individual, and none seek class certification or seeks relief on behalf of a class; (2) the AAA has rejected this argument already; and (3) the issue of whether the cases are individual or class action is irrelevant to the proper question before the court – whether the Clayton Act claims asserted are within the scope of the arbitration clause. Opp'n to P.I. Motion (dkt. 62) at 14-16. These arguments are unconvincing. First, as discussed above, the mere labeling of the demand is not dispositive.

Second, Customers' statement that the "AAA has already determined the demands for arbitration are not class or representative actions, and that they were properly filed," overstates AAA's position. Opp'n to P.I. Motion at 15. AAA made an "administrative determination that Claimant has met the filing requirements by filing a demand for arbitration providing for administration by the AAA under its rules . . . ." Bursor Decl. Ex. 7. That AAA determined Customers met its filing requirements says little about whether AAA believes Customers' actions are actually any form of class or representative proceeding. Even if AAA had definitively concluded that the Customers' arbitrations were not class or representative actions, the arbitrability of the dispute is for the Court to decide, as discussed in detail above.

Customers' third argument is unconvincing. Customers argue it would not matter if they had brought a class claim because the arbitration clause covers "all disputes and claims," including "claims that are currently the subject of a purported class action." Agreement § 2.2(1). First, the actual text of the agreement states "claims that are currently the subject of a purported class action <u>in which you are not a member of a certified class</u>." <u>Id.</u> (emphasis added). Thus, it is not as far-reaching as customers state, but rather, means a customer cannot avoid arbitration by pointing to the existence of a putative class action in which he or she is an absent class member. It cannot mean that a customer may bring class

1 or representative arbitrations because that would make the express prohibition of class
2 arbitration in clause meaningless.

3 Customers' attempt to argue that class claims are covered by the arbitration agreement
4 because ATTM often moves to compel claims that are brought in court as putative class
5 actions is also unavailing. ATTM does not attempt to compel arbitration of these claims as
6 class arbitrations, but rather, moves to compel the name plaintiff and any other putative class
7 members to arbitrate their individual claims individually, in accordance with the terms of the
8 arbitration agreement. Thus, it is not now making the opposite argument from the argument
9 in made in those cases.

10 ATTM is likely to succeed on the merits of its claim that the arbitration demands
11 constitute "any form of a representative or class proceeding," and thus are barred by the
12 arbitration agreements.

### b. Demand for Non-Individualized Injunctive Relief

14 Section 2.2(6) of the arbitration agreement specifically bars demands for injunctive
15 relief that would affect the rights of parties other than the claimant who filed the demand – a
16 claimant may request an injunction "only in favor of the individual party seeking relief and
17 only to the extent necessary to provide relief warranted by that party's individual claim."
18 Agreement § 2.2(6). Customers' demands violate this requirement because they do not seek
19 any relief that would affect only the particular claimant initiating the arbitration. Rather, they
20 seek an injunction flatly prohibiting the entire merger or alternatively, imposing global
21 restrictions on the merger. This would affect a broad array of individuals and groups beyond
22 the individual claimant. Thus, such a demand is far beyond the scope of the arbitration
23 agreement, and should not be enforced.

24 The limitation on relief is supported by Supreme Court jurisprudence. An arbitrator
25 "has no general charter to administer justice for a community which transcends the parties'
26 but rather is 'part of a system of self-government created by and confined to the parties.'"
27 Stolt-Nielsen, 130 S. Ct. at 1774 (quoting United Steelworkers, 363 U.S. at 581). The
28 Second Circuit has stated an arbitrator "exceed[s] his powers in determining the obligations

1  of a corporation which was clearly not a party to the arbitration proceeding . . . . [A] decision
2  whether parties other than those formally signatories to an arbitration clause may have their
3  rights and obligations determined by an arbitrator when that issue has not been submitted to
4  him is not within the province of the arbitrator himself but only of the court." Orion
5  Shipping & Trading Co. v. E. States Petroleum Corp., 312 F.2d 299, 300-01 (2d Cir. 1963).
6  The broad injunctive relief sought here would be incompatible not only with the language of
7  the agreement but the nature of arbitration generally.

8       Customers argue in response that the limitation on injunctive relief does not restrict
9  the scope of arbitrable disputes, which they argue is the only issue the Court can decide.
10 Rather, the limitation on injunctive relief only addresses what remedies the arbitrator may
11 award, and not whether the parties must arbitrate their dispute in the first place. Customers
12 argue that the question of what remedies the arbitrator may award is for the arbitrator to
13 decide in the first instance, subject to judicial review under 9 U.S.C. § 10 only after a final
14 arbitral award is made, citing W.R. Grace & Co. v. Local Union 759, Int'l Union of the
15 Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 765 (1983); Sunoco, Inc.
16 v. Honeywell Int'l, Inc., No. 05-7984, 2005 WL 2559673 (S.D.N.Y. Oct. 13, 2005).

17      The cases are not so broad. In fact, the Court in W.R. Grace stated that "just as is any
18 other contractual provision, the scope of the arbitrator's authority is itself a question of
19 contract interpretation that the parties have delegated to the arbitrator." 461 U.S. at 765
20 (emphasis added). There, an arbitrator had to apply a contract provision that gave preclusive
21 effect to earlier awards entered by a prior arbitrator, so long as the prior arbitrator had acted
22 "within his jurisdiction and authority as specified in [the] Agreement." Id. at 763 n.5. The
23 subsequent arbitrator determined that the prior arbitrator's award lacked effect because the
24 prior arbitrator had exceeded his authority in rendering the award. Id. at 765. The Court
25 stated it could not second-guess the subsequent arbitrator's determination of the merits of the
26 preclusion question, which in turn depended on whether the prior arbitrator had exceeded his
27 authority. Id. This, though, conforms with the allocation of power set out by the parties in
28 the agreement, which delegated the question of the scope of the arbitrator's authority to the

1 arbitrator himself. That is not the situation here. Instead, such questions are specifically
2 delegated to the Court.

3 In <u>Sunoco, Inc. v. Honeywell Int'l, Inc.</u>, a party sought a preliminary injunction
4 against an ongoing arbitration on the ground that "Honeywell's demand for arbitration
5 exceeded the scope of the Agreement." 2005 WL 2559673, at *1. The Court denied the
6 motion as "an impermissible interlocutory attack on an ongoing arbitration proceeding," and
7 stated "the proper mechanism for any attack on an arbitrator's decision on the issue is
8 through . . . an action to vacate the final award." <u>Id.</u> at *3-*4. Yet, the case is not as
9 analogous as Customers argue. The Court, in denying the injunction, stated, "[h]aving
10 <u>chosen to submit that issue to the arbitrator</u>, the proper mechanism for any attack on the
11 arbitrator's decision on the issue is through [a] cause of action to vacate a final award." <u>Id.</u> at
12 *3 (emphasis added). Thus, the situation is different than the one here, where ATTM has not
13 chosen to submit the issue of the scope of relief to the arbitrator. In addition, the <u>Sunoco</u>
14 Court based its decision in part on that fact that Sunoco failed to demonstrate any irreparable
15 harm stemming from waiting till the end of the arbitration for a ruling. <u>Id.</u> As discussed
16 further below, that is also not the case here.

17 No Defendant seeks damages for any injury that the merger allegedly would cause to
18 him or her individually. Rather, Defendants each request an injunction against the merger or,
19 alternatively, imposition of conditions on the merger. The vast scope of individuals and
20 groups that would be affected by Defendants' claim demonstrates that Defendants do not
21 request individual injunctive relief. Moreover, that a victory in one Customer's arbitration
22 would be a victory for all Customers demonstrates that the relief sought is not individual
23 injunctive relief. The agreement specifically deems such relief to be outside its proper scope.
24 Agreement § 2.2(6). As the only relief sought by the individual defendants is relief that is
25 foreclosed by the language of the arbitration provision, the demand for arbitration is beyond
26 the scope of disputes that the parties have contractually agreed to arbitrate. The parties
27 withheld from the arbitrator the power to decide questions that would necessarily affect the
28

15

rights of more than the parties to the dispute through the grant of declaratory or injunctive relief. Thus, ATTM is highly likely to succeed on the merits of its claim.

### B. Irreparable Harm

ATTM will suffer irreparable harm if the arbitrations are not enjoined. First, as other circuits have determined, "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." UBS Secs., LLC v. Voegeli, 405 F. App'x 550, 552 (2d Cir. 2011); see also McLaughlin Gormley King Co. v. Terminix Int'l Co., 105 F.3d 1192, 1194 (8th Cir. 1997). Courts in this district agree that being forced to defend an improper arbitration demand requires expending human and monetary capital for which there is no adequate remedy at law. Herbert J. Sims & Co., Inc. v. Rovan, 548 F. Supp. 2d 759, 766 (N.D. Cal. 2008); see also Sykes v. Escueta, No. 10-3858, 2010 WL 4942608, at *4 (N.D. Cal. Nov. 29, 2010) (same); Wachovia Secs. LLC v. Raifman, No. 10-4573, 2010 WL 4502360, at *10 (N.D. Cal. Nov. 1, 2010) (same).

Second, the harm is multiplied exponentially because ATTM will be forced to arbitrate the same claim in at least 24, but potentially up to over 1,000, separate hearings – all of which must take place by early November 2011 at the latest. Moreover, it will be forced to participate in these proceedings at the same time that it is engaged in litigation with the DOJ and a proceeding before the FCC, all of which will require the same witnesses. In addition, ATTM will be harmed by having to spend considerable time distilling its evidentiary presentation regarding the numerous complicated antitrust issues raised by the demands (which will be the subject of intensive review in the DOJ case and in the FCC) into a 1-3 day presentation under the AAA rules. Finally, the AAA rules require each arbitrator to issue an award within 14 days of the hearing. In contrast, Judge Huvelle has scheduled six weeks for the DOJ trial challenging the merger. The expedited schedule will harm ATTM by depriving it of its right to reasoned decisionmaking because it is impossible for anyone to digest and decide these numerous, complex issues within such a short period of time.

Customers do not make a direct response to this argument in their Opposition. ATTM has met the burden of demonstrating irreparable harm.

### C. Balance of the Hardships

The balance of the hardships tips sharply in favor of ATTM. In contrast to ATTM's irreparable harm, Customers would suffer no serious harm from a preliminary injunction because (1) the DOJ lawsuit invokes the same statutory provision as the arbitration demands and seeks the same ultimate relief of stopping the merger; and (2) the FCC is also assessing the competitive impact of the merger. Thus, there is no prejudice from delay when these ongoing government proceedings could result in the precise relief the Customers seek.

Customers respond that they filed these arbitrations prior to the DOJ action, and that Congress gave private parties an independent right to bring such actions. This is not a strong response to the balance of hardships issue. That they might have some right does not speak to the comparison needed for balancing. Neither of these suggest a strong harm from delay either. Customers state their arbitration demands are more comprehensive than the DOJ complaint – 226 pages versus 21 pages. This argument is almost nonsensical given that the arbitration must be undertaken in 1-3 days and Judge Huvelle has scheduled a six-week trial on the DOJ complaint. Customers also argue that arbitration may not be stayed for unrelated litigation, and should not be delayed to await rulings in related litigation under Volt Information Sciences, 489 U.S. at 472; Preston v. Ferrer, 552 U.S. 346 (2008). Yet, these cases deal with delays to proper arbitration demands where there is also related litigation, which is not the situation here.

Customers also argue the prejudice of delay would be great for them because under the terms of the merger agreement the merger must close by March 20, 2012. Bursor Decl. Ex. 17. Judge Huvelle has set a trial date for the DOJ case of February 13, 2012, in anticipation of a six week trial. Bursor Decl. ¶ 19. Thus, Customers argue that as a practical matter there will be no time to arbitrate after the trial of the DOJ case. Yet, the relevant time frame in assessing whether a preliminary injunction should issue is not how long it would take for the DOJ's trial to come to an end; it is how long it would take for this case to be resolved, and there is no reason that will take up until the merger date. Moreover, this Court

is not contemplating, nor is ATTM asking for, a stay pending the DOJ resolution of the case. The issues are separate, and thus this argument is unavailing.

In addition, Customers will not suffer any prejudice because their claims are likely not yet ripe for adjudication. The Seventh Circuit has stated that any private litigation seeking to enjoin a merger is premature "until all required state and federal approvals have been obtained – for the agencies might insist on changes that would substantially alter the merger's competitive effects." S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc., 191 F.3d 842, 843 (7th Cir. 1999) (dismissing on ripeness grounds a challenge to a telecommunications merger under Section 7 of the Clayton Act because the FCC had not yet issued the required approval). Thus, a preliminary injunction that delays pursuit of claims that are likely not ripe cannot cause any hardship to Customers, much less hardship sufficient to outweigh the harms to ATTM if the arbitrations go forward.

Customers respond that whether the claim is ripe under South Austin is an argument on the merits the Court cannot consider. Opp'n at 27. Moreover, Customers argue no court has ever followed South Austin on this point, and that ATTM disavowed the reasoning of the case when it pushed for and obtained an early trial date in the DOJ case, before the FCC review was completed. Id. First, while no court appears to have followed South Austin, Customers also do not point to any case disagreeing with it and allowing an individual challenge to a merger to proceed when government approval is a prerequisite to the merger. Second, the status of the DOJ case is not dispositive because the DOJ stands in different shoes from individual private plaintiffs. Third, this Court is not determining on the merits that the claim is unripe, but rather, weighing this likelihood in the separate balance of the hardships inquiry.

Moreover, preliminarily enjoining the arbitration does not leave the Customers completely without recourse. The arbitration agreement "does not preclude [Customers] from bringing issues to the attention of federal, state, or local agencies, including, for example, the Federal Communications Commission. Such agencies can, if the law allows, seek relief against [ATTM] on [Customers'] behalf." Agreement § 2.2(1). The FCC is

1 already investigating the merger, and nothing prevents Customers from bringing their
2 concerns to the FCC's attention. Thus, the balance of the hardships tips sharply in favor of
3 ATTM.

### D. Public Interest

There is a strong public interest in ensuring that regulatory agencies and courts hearing government actions are able to consider the merger without the potential for being preempted by the decisions of one of dozens of arbitrators. The same is true of the extensive proceedings and review being undertaken by the FCC. Finally, a preliminary injunction would serve the public interest by ensuring that the thousands of affected third parties that have been participating in public proceedings before the FCC do not have their rights and interests decided in a private action in their absence and without their consent.

Customers only response to this argument seems to be that the arbitrations will not adjudicate the rights of absent parties. Opp'n to P.I. Mot. at 28-29. Customers state that while other parties may be "interested" in the outcome of the case, they do not have any legal rights or obligations that will be determined by the arbitrator. Not even T-Mobile. This argument is not convincing. T-Mobile's legal interest in its Merger Agreement with ATTM will be directly adjudicated by the arbitrator.

Thus, the public interest weighs in favor of issuing a preliminary injunction. Given that all four Winter elements are satisfied, the Court grants ATTM's Motion for Preliminary Injunction. The Motion to Compel Arbitration is thereby denied as moot.

### E. Case No. 11-4412

The Court denies Schroeder and Mendoza's Motion for Preliminary Injunction Enforcing the Arbitration Agreement on the grounds set out above. Case No. 11-4412, dkt. 4. The Court will not force ATTM to engage in arbitration that is a violation of the arbitration agreement. Thus, the issue regarding payment of fees is moot.

//
//
//

## IV. CONCLUSION

For the foregoing reasons the Court GRANTS ATTM's Motion for Preliminary Injunction. Customers are enjoined from arbitrating the claims set forth in their arbitration demands. No bond is required. Accordingly, the Court DENIES the remaining motions as moot.

**IT IS SO ORDERED.**

Dated: October 26, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE